## Talman *vs.* Smith, Sheriff, &c.

When a mortgagor of chattels is in default in not paying the mortgage debt, the mortgagee has a right to take the property into his possession and dispose of it at his pleasure.

If, after forfeiture, the mortgagee sells the property to a third person, with the consent of the mortgagor, this will be equivalent to a formal foreclosure of the equity of redemption.

And the title of the purchaser cannot be assailed by creditors of the mortgagor having no lien upon the mortgaged property at the time of his purchase.

One purchasing the property from the mortgagee, and taking possession after forfeiture of the condition of the mortgage, at a time when there was no creditor in a situation to object to the sale, and continuing in possession, is to be deemed, *prima facie,* the absolute owner, and is not bound to go further, in the first instance, and account for the possession of the mortgagor during the existence of the mortgage.

No presumption of fraud in the purchase exists by reason of the previous possession of the mortgagor; and a creditor of the mortgagor, asserting such fraud, holds the affirmative, and is bound to establish it by proof.

The want of possession in the mortgagee is not sufficient evidence, of itself, to authorize the presumption of fraud.

ACTION to recover the possession of personal property. Defense that it was the property of James W. Sawyer, and that it was taken by the defendant, as sheriff of Monroe county, under an execution issued upon a judgment recovered in this court against him. On the 1st October, 1849, James W. Sawyer conveyed to one McIntosh certain real estate, consisting of a block of stores on the corner of Mumford and State streets, the house and lot where he and his family

resided, corner of Ann and Sophia streets, and a house and lot on Sophia street, in the city of Rochester. McIntosh, on the same day, conveyed the premises to Mrs. Sawyer, the wife of James W. Sawyer. On the same day, Oct. 1, these deeds were both recorded, in the clerk's office. On the 22d of January, 1856, Mr. and Mrs. Sawyer conveyed to Caroline E. Wilson the house and lot on Sophia street, for the consideration of $2400. The purchase money was paid to James W. Sawyer. There was evidence tending to show that the purchase money was received by Sawyer under an arrangement between him and his wife that he should receive and invest it for her. There was also evidence tending to show the contrary. In 1833, George Caldwell, a brother of Mrs. Sawyer, died, leaving a will, by which he bequeathed to her a legacy which amounted, at the time it was paid over to her, to $1500. This legacy was paid over to Mr. Sawyer in 1850. There was evidence tending to show that when Sawyer received this money he agreed with his wife that he would take and invest it for her. There was also some evidence to the contrary. In October, 1858, Sawyer became insolvent, and made an assignment to S. M. Spencer and W. C. Rowley. Before making this assignment, he paid over to his wife the money he had received as the purchase money of the property sold to Mrs. Wilson, with interest, and the amount of the legacy from George Caldwell, with interest, after deducting what he had previously paid. The whole amounted to $4300, and was paid in a note of S. M. Spencer & Co. for $1800, and cash. On the 6th of October, 1858, James W. Sawyer executed and delivered to S. M. Spencer & Co. a chattel mortgage, to secure the payment of a promissory note which they had loaned him, for his accommodation, payable in 63 days, by which Sawyer mortgaged the property in question in this action. This note was afterwards paid by S. M. Spencer & Co. The property mortgaged was household furniture, and was in the house on the corner of Ann and Sophia streets, where Mr. and Mrs. Sawyer resided. Whether the

Talman *v.* Smith.

mortgage was made in good faith was made a question before the jury.   The mortgage having become forfeited, Mrs. Sawyer, on the 24th of December, 1858, purchased the property of the mortgagees.   The defendant seized the property under an execution issued upon a judgment recovered by Henry L. Fish and others against Sawyer, on the 25th of March, 1859. After the levy Mrs. Sawyer sold the property to the plaintiff, who, after demand of the property, and refusal, brought this action.

The court, in submitting the case to the jury, instructed them that the onus of showing that the mortgage under which the plaintiff claimed title, was made in good faith, rested on the plaintiff, and that the mortgage was presumed to be fraudulent.   To this the plaintiff excepted.   The court also instructed the jury that Sawyer had no right to pay his wife the money received on account of the legacy of George Caldwell, even if they should find that he received the same upon an agreement to invest the same for her.   To this the court also excepted.   The court further instructed the jury that if Mrs. Sawyer permitted her husband to take the $2400 received on the sale of the property to Mrs. Wilson, in his own name, and use it as his own, the law presumed a gift, and the money became the money of the husband and his creditors; to which the plaintiff's counsel excepted.

The jury found a verdict for the defendant, and the court directed this motion for a new trial to be heard at the general term, in the first instance.

*W. F. Cogswell*, for the plaintiff.

*T. R. Strong*, for the defendant.

*By the Court,* WELLES, J.   The justice at the circuit instructed the jury that as possession of the property in question was not changed at the time the mortgage was given by James W. Sawyer to S. M. Spencer & Co., the burthen was on the

plaintiff of showing that the mortgage was made in good faith and without any intent to defraud creditors ; because Mrs. Sawyer purchased the property of the Spencers while the same was in the possession of Mr. Sawyer, and therefore she and the plaintiff, in reference to the property, stood in the same position as S. M. Spencer & Co. would, if they were prosecuting this action, and no better. In these respects I think the learned justice fell into an error.

The mortgage vested the legal title to the property in the Spencers, as against Sawyer the mortgagor, subject to be defeated by performance of the condition of the mortgage. The condition not having been performed, the title at law, as between the parties to it, vested absolutely in the mortgagees, divested of the condition of the grant contained in the mortgage ; leaving only an equity of redemption in the mortgagor. When Sawyer was in default in not paying the note to secure which the mortgage was given, at its maturity, the Spencers had a right to take the property into their possession and dispose of it at their pleasure. This right continued until they sold the property to Mrs. Sawyer, on the 24th of December, 1858, a few days, only, after the forfeiture of the condition of the mortgage. The sale was with the consent of the mortgagor, which was equivalent to a formal foreclosure of the equity of redemption. The right of the mortgagees to the property, as the legal owners, and to take it into their possession, was as perfect upon the failure of the mortgagor to perform the condition of the mortgage as it would have been in case they had sold it under the mortgage and become the purchasers at such sale. These propositions, I apprehend, cannot be controverted. Up to the time of Mrs. Sawyer's purchase, the creditor at whose instance the property was afterwards seized by the defendant, had no judgment against Sawyer the mortgagor, and did not obtain one until three months thereafter. He therefore had no lien upon the property in question, when Mrs. Sawyer purchased. At this time the failure of Spencer & Co. to take possession could not be

alleged by this creditor, as he had no judgment or execution to enable him to attack the validity of the mortgage. Before the sale by the Spencers to Mrs. Sawyer, the actual possession was in James W. Sawyer, her husband, and upon the sale the possession became, *eo instanti*, transferred, by operation of law, to Mrs. Sawyer. No manual change or handling or moving of the property was necessary. Her possession was all that the nature of the case admitted. She and her husband lived together, and kept house for years before and at the time of these transactions, in the same house, the title of which was in Mrs. Sawyer, where the property had always been, so far as the case shows.

Mrs. Sawyer's title to the property in question having thus been acquired from the Spencers at a time when the creditor now attempting to impeach it had no lien upon the property by judgment or execution, and was therefore not in a condition to assail its validity as against the Spencers, and she having been in the actual possession ever since her purchase, she was, *prima facie*, the absolute owner, until she conveyed the property to the plaintiff, who was not bound in the first instance to go further, and account for the possession of Sawyer during the existence of the mortgage, and before the purchase of Mrs. Sawyer. No presumption of fraud in her purchase existed by reason of such previous possession of her husband. And if not, the defendant held the affirmative, and was bound to establish the fraud by proof.

The charge, however, cast the burthen upon the plaintiff of proving that there was no fraud, and if he had given no evidence to overcome such assumed presumption, or not sufficient, in the opinion of the court, to be submitted to the jury, the plaintiff should have been nonsuited. The effect of the instruction to the jury was, that they were to start, in their examination, with the assumption that the mortgage was fraudulent, by reason of the want of possession in the mortgagees, and then to examine the evidence and see whether the plaintiff had proved that it was given in good faith and

Talman *v.* Smith.

without a fraudulent intent. Instead of that, they should have been advised that the want of possession in the mortgagees was not sufficient evidence, of itself, under the circumstances of the case, to authorize the presumption of fraud. The late case of *Allen* v. *Cowan,* in the court of appeals, (23 *N. Y. Rep.* 502,) is very much like the present, in its leading features, and, as it seems to me, clearly sustains the foregoing views.

If, in the case at bar, the Spencers had not sold the property, or taken possession of it, and they had brought the action against the defendant for seizing it, the rule invoked by the defendant in this case would have been directly applicable, and the plaintiff in the case supposed would have been, beyond all controversy, required to account for the possession in Sawyer, and show that the mortgage was given in good faith and without any intent to defraud.

But in this case the Spencers have sold the property to a purchaser who took immediate possession, and at a time when there was no creditor who was in a situation to object to the sale, and she has continued in possession until it was taken by the defendant.

The charge of the judge that Mrs. Sawyer and the plaintiff stood in the same position as the Spencers would, if they were prosecuting the action, and no better, was therefore also erroneous.

As the foregoing views lead inevitably to a new trial, it becomes unnecessary to decide the other questions raised and discussed upon the argument.

A new trial should therefore be ordered, with costs to abide the event.

[MONROE GENERAL TERM, March 2, 1863. *Johnson, J. C. Smith* and *Welles,* Justices.]