## KINGSBURY *vs.* WILLIAMS.

After a guarantor of rent has become fixed and liable for rent in arrear, such liability can only be discharged by payment, release or other satisfaction. It will not be discharged by a surrender by the lessees, of the unexpired term and the possession of the demised premises without the knowledge or consent of the guarantor, upon an agreement that the lessor will release his claim for rent yet to accrue, but that such surrender shall not affect his claim for rent already due. JOHNSON, J. dissented.

Such a case is not within the principle which discharges a surety upon the ground of a variation of the contract without his consent; the remedies of the guarantor being in no way impaired or delayed by the surrender.

MOTION for a new trial upon exceptions taken at the circuit, and ordered to be heard in first instance at general term, judgment in meantime suspended.

This is an action by a lessor to recover rent in arrear, from a guarantor or surety in the lease. On the 13th of September, 1855, the plaintiff demised by lease to Thomas Hilliard and Walter Bourne, a "certain village lot" with the buildings thereon," situated in the village of Lyons, from the first day of October of that year, " for and during the term of five years then next immediately ensuing, and fully to be complete and ended," for the yearly rent of $128, payable quarterly on the first days of January, April, July and October. The tenants covenanted to pay such rent. The defendant executed an instrument in writing appended to such lease, bearing even date therewith, under his hand and seal, reciting that he, at the request of said lessees, and in consideration of $1 to him in hand paid by the lessor, guarantied the payment of the rent to the lessor, according to the provisions of the lease. The tenants went into possession under such lease, and continued to jointly occupy the premises, until July 1, 1856, when Hilliard purchased his co-tenant's interest, who surrendered possession to him, and he continued as sole tenant in possession until the building was burned on January 1, 1858. Hilliard was in possession at the time of the burn-

Kingsbury *v.* Williams.

ing, and Bourne was not. The most of the buildings were destroyed. The buildings could not be occupied after January 1, 1858. The plaintiff's agent, the plaintiff being a non-resident of the state, was, within a month after the burning, notified by the tenant that no rent would be paid for the period after January 1, 1858, unless buildings were put thereon. On the 9th day of April, 1860, Hilliard and the plaintiff executed an instrument in writing, under their hands and seals, reciting and referring to the said lease. and the release of Bourne to Hilliard, in and by which the plaintiff released all claims for rent to accrue thereafter, and the said Hilliard surrendered to the plaintiff his term and his rights under said lease. It was stated in said agreement that the plaintiff's claim for rent which had already accrued should not in any way be affected by said agreement. At the time of the execution of this agreement, nine quarter-yearly installments of rent had become due upon the lease, and remained unpaid, amounting to $292.50, and two installments for the unexpired portion of the term were yet to accrue and become due. After the execution of said agreement, the plaintiff conveyed the demised premises to one Cramer, who went into possession and had since remained in possession thereof. The release, conveyance to Cramer and occupation by him were without the knowledge, privity or consent of the defendant. The court decided that the execution of the sealed instrument dated April 10, 1860, with the surrender of the term and possession of the demised premises by Hilliard to the plaintiff, pursuant to such instrument, the conveyance of the demised premises to Cramer, and Cramer's occupation of said premises under said conveyance, without the knowledge or consent thereto by the defendant, amounted to a material alteration of the contract to which the defendants' guaranty related; and the defendant not knowing of or assenting to the alteration, was thereby discharged from his liability

upon the guaranty, and directed a verdict for the defend-ant, which was entered.

*Wm. Clark*, for the plaintiff. I. The guaranty signed by the defendant related to nothing but the payment of rent as it should become due. It had no relation to the term granted to the tenant.

II. As soon as any installment of rent became due and unpaid, an action accrued to the plaintiff to recover the same against the defendant as guarantor.

III. On the 1st day of April, 1860, the whole rent claimed by the plaintiff had·become due, and his right of action against the guarantor, as well as the lessees, to recover the same, was perfect.

IV. The plaintiff, on the 1st day of April, 1860, having an unquestionable right of action to recover against the guarantor the accrued rent, that right could not be dis-charged or taken away except by a release of it, or pay-ment and satisfaction of the rent, or some act by which the lessees were discharged from their liability for it.

V. Neither payment nor release is pretended, nor is it claimed that any agreement was made that the plaintiff's right should in any way be released or discharged, or that any instrument was executed which related to the plain-tiff's right of action.

VI. The idea of the judge that the instrument in writing dated April 9, 1860, altered the agreement, the fulfillment of which the defendant guarantied, is clearly erroneous. 1. Not a word, syllable or letter in the lease was in the least changed, altered, obliterated or added to. 2. The time of payment of the rent was not changed. 3. The instrument was a conveyance back to the lessor of the unexpired portion of the term created by the lease. This did not alter the lease. It was an act based upon the lease, and was an affirmance of it. As well might it be claimed that the deed of one who parts with his title to

real estate is an alteration of the deed by which he obtained title. The instrument was also a release of the lessee from liability for rent yet to accrue. This did not alter the lease, but by the release of the rent affirmed the existence and validity of the lease. As well might the guarantor of the payment of the installments to become due on a bond claim that a release to the obligor of his liability for the last installments was an alteration of the bond by which he was released from liability for prior installments. As well might the indorser or guarantor of a promissory note claim that releasing the liability of the maker as to one half of the amount of the note, discharged the liability of the indorser or guarantor for the other half.

VII. The guarantor had no interest in, or control over the term, and is not affected by any disposition the lessee might make of it. The lessees might sell the term to whomsoever they please, or convey it without consideration, or abandon the estate in defiance of the guarantor and without affecting his liability for rent. It follows that they might surrender to the landlord any unexpired portion of the term, without affecting the guarantor's liability any further than releasing him from liability for rent so far as they themselves were released.

VIII. The following are cases in which the guarantor would be released: 1. When the time for the payment of the rent was extended by a valid agreement. This would deprive the guarantor of his right to pay the rent, and collect of his principal. 2. When the contract is altered in any material part, by erasure or interlineation. In this case its identity is destroyed; it is not the contract to which the guaranty related. 3. When the contract is annulled and made void by any means. He cannot be discharged from the whole simply by a release of the principal from a portion of his liability, as in the present case.

IX. Judgment *non obstante veredicto* should be ordered, or otherwise a new trial should be granted.

*J. Welling*, for the defendant. I. The witten agreement between the plaintiff and the tenants, Hilliard, dated April 9, 1860, the evidence that the defendant had no knowledge of the execution of said instrument until after it was executed, and had never assented thereto, and the conveyance by the plaintiff to Cramer of the demised premises; that Cramer went into actual possession under such conveyance, erected buildings thereon, and had ever since been in such possession, with the deed from the plaintiff to Cramer, were each proper evidence. The decision of the court upon the whole evidence, at its close, and the direction to the jury to find a verdict for the defendant, was proper and fully sustained by a uniform line of decisions, and by all the writers. 1. The instrument between the plaintiff and Hilliard, the tenant, bearing date 9th April, 1860, was a surrender by the tenant of the term granted by the lease. If a lessee for life or years, takes a new lease of the same land, and one term is incompatible with the other, as embracing part of the same period, this is a surrender in law of the first lease. And this rule applies, though the second lease be for years, where the first was for life; or although the second lease be for a less number of years than the first. (*Smith on Real and Personal Property, Law Lib.* 3d *series, marg. p.* 531, *citing* 2 *Pres. Shep. T.* 301.) The usual operative words are, "surrender, give or grant, and yield up. But any other words that denote that the remainderman or reversioner is to have the particular estate will suffice. (*Id. marg. p.* 563, *citing* 2 *Black. Com.* 326. 2 *Pres. Shep. T.* 306.) 2. As between private parties, the law is that any alteration in the obligation or contract, in respect of which a person has become surety, without the consent of the latter, extinguishes his obligation and discharges him, (*Burge on*

Kingsbury *v.* Williams.

*Surety,* 214; *Theobold,* § 132; *Whitcher* v. *Hall,* 5 *Barn. & Cres.* 269;) and this result follows, irrespective of the inquiry whether the alteration could work any injury to the surety or not. (*Bangs* v. *Strong,* 4 *Comst.* 315.) The reason upon which this rule is founded is, that the surety has never made the contract upon which it is sought to charge him. This answer is, if it is sought to charge him upon the altered contract, that he never made any such bargain; and if upon the original contract, that such contract no longer exists, having been legally terminated by the altered or substituted contract made by the parties. In either contingency the answer furnishes a complete defense. (*Per Grover, J. in The People* v. *Vilas,* 36 *N. Y. Rep.* 460.) Also Hunt, J. in same case at page 471, who says: "Herein the present case differs from the most of the authorities cited, which were cases of contract simply. The altered contract in these cases takes the place of, and entirely ends the original contract; and if the party is not a surety upon the substituted contract, he is upon none, for none other is in existence." "The principle on which the surety is discharged by giving time to the principal is, that it *alters* the contract by which the surety agreed to become liable, and not that this alteration is to his *prejudice,* for though it be *beneficial* to him, the result will be the same." (2 *Meriv.* 277. 8 *Dowl. & R.* 22. *Per N. Hill, arguendo, in Bangs* v. *Strong,* 4 *Comst.* 317.) Whenever, therefore, he (the guarantor) fairly assumes a liability it may be extinguished by any act or omission of the guarantee which alters the terms of the contract, unless it be with his consent. Nor does it matter that such an alteration be for the benefit of the guarantor, because he has a right to stand upon the very terms of his agreement. (*Story on Cont. vol.* 2, § 870, *ed.* 1856, *citing Miller* v. *Stewart,* 9 *Wheat.* 680; *Wright* v. *Johnson,* 8 *Wend.* 512; *Rathbone* v. *Warren,* 10 *John.* 587; *Bacon* v. *Chesney,* 1 *Starkie,* 192; *Bonar* v. *Macdonald,* 1 *Eng. L. and Eq.* 1.)

If a new contract is substituted in place of the original contract, or if the original contract is altered in any material point, without the surety's knowledge or consent, so as to constitute a new agreement varying substantially from the former, the surety is not longer bound. (*Addison on Cont.* 2d *Am. ed. p.* 669; *also p.* 670.) When the rights and obligations of the parties are thus changed without the consent of the surety, it cannot admit of a doubt that he will be discharged. In contemplation of law it is an injury to the surety, although the court may not be able to see that he has suffered any damage. (*Per Bronson, J. in Bangs* v. *Strong, in Court of Errors,* 7 *Hill,* 252: *See Rees* v. *Berrington,* 2 *Vesey, Jr.* 542, *per Lord Eldon.*) This case and language is cited with approval by the court in *Rathbone* v. *Warren,* (10 *John.* 595.)

II. That this action is brought to recover only the installments of rent unpaid at the date of the surrender, April 9, 1860, does not prevent the application of the principles and rules before cited. (*Henderson* v. *Marvin,* 31 *Barb.* 299, 300. *Mill* v. *Stewart,* 9 *Wheat.* 680.) In *Bangs* v. *Strong,* (4 *N. Y. Rep.* 316,) after a judgment against the principal and the surety, the creditor entered into an agreement with the principal without the knowledge or consent of the surety, binding the creditor to receive in payment land at an appraisal, instead of money; *held,* that the surety, even after judgment, was discharged.

III. The clause in the agreement of April 9, 1860, in these words: "Said Kingsbury is not to be held to have waived any claim he has or may have for rent of said premises which may have accrued or become due at the date hereof," is not valid or operative to preserve the defendant's liability for such rent. The defendant's contract is ancillary to, or dependent upon, the existence of another; when the latter is discharged the former is also, and this in spite of the expressed intention of third parties, *i. e.* the plaintiff and the tenant, to keep the former in force for

Kingsbury *v.* Williams.

specified purposes. "Nothing can be better settled, than the doctrine that if an obligation be dependent on another obligation, (and by parity of reasoning, upon the legal existence of another instrument,) and the latter be discharged or become void, the former is also discharged." (*Miller* v. *Stewart,* 9 *Wheat.* 706.) In *Broom's Legal Maxims,* (*edition of* 1868, *p.* 669, *marg.*) in treating of the maxim: "*Modus et conventio vincunt Legem,*" the author says: "In the above and similar cases, these as well as in some others relative to the disposition of property, which have been noticed in the preceding chapter, another maxim emphatically applies: "*Fortior et potentior est dispositio legis quam hominis.* For instance, "surrender," is the term applied in law to "an act done by or to the owner of a particular estate, the validity of which he is estopped from disputing, and which could not have been done if the particular estate continued to exist; as in the case of a lessee taking a second lease from the lessor, or tenant for life accepting a feoffment from the party in remainder, or a lessee accepting a rent charge from his lessor. In such case the surrender is not the result of *intention;* for if there was no intention to surrender the particular estate, or even if there was an express intention to keep it unsurrendered, the surrender would be the act of the law, and it would prevail in spite of the intention of the parties."

E. DARWIN SMITH, J. The defendant undertook in and by his agreement and guaranty, indorsed upon the lease, that Hilliard & Bourne, the lessees in said lease, should pay the rent reserved in and by said lease to the lessees, according to the terms and provisions of said lease. The rent, by the terms of the lease, was payable quarterly in the sum of thirty-two dollars and fifty cents, on the first days of January, April, July and October, amounting to $130 in each year. The proofs on the trial show that the said lessees occupied the demised premises under said

lease and were in arrear for rent for two years and one quarter next prior to April 1, 1860. The lease would have expired on the first day of October, 1860, and the same was put an end to by the surrender of the premises by the lessees and a release of all claim for rent thereafter by the lessor, by the agreement of the 9th day of April, 1860.

At that time the defendant was clearly fixed and liable for the rent in arrear. This liability could only be discharged by payment, release or other satisfaction. It is a settled rule that a right of action for a covenant broken or other legal cause, once created or existing, remains until legally discharged. The decision at the circuit was that the defendant was discharged from his liability for such rent upon his said guaranty, on the ground that the execution of the said instrument of the 9th of April, 1860, with the surrender of the term and possession of the demised premises pursuant to said instrument, without the knowledge or consent of the defendant, amounted to a material alteration of the contract to which the said guaranty relates.

The agreement referred to clearly was not designed to have that effect. As between the parties, the right of the plaintiff to recover for the rent in arrear is expressly retained and reserved in the contract, and if it had not been so reserved the surrender of the term by a lessee does not discharge him for any previous liability for a breach of the covenant of the lease. (2 *Shep. Touch.* 301.)

The defendant is a surety, and his contract confessedly is to be construed strictly, and his liability cannot be extended beyond the clear terms of the agreement, and will be discharged by any acts or omissions of the guarantee, which alter the substance or force of the contract without his consent. (2 *Story on Contracts*, 870. *People* v. *Vilas*, 33 *N. Y. Rep.* 460.)

Before breach, any material alteration of the contract, it is well settled, will discharge the surety and any other party not consenting to it. The case of *Miller* v. *Stewart*,

Kingsbury *v.* Williams.

(9 *Wheaton*, 680,) was a case of this kind, and well illustrates the rule. The defendants became sureties in a bond to the plaintiff for the faithful discharge of his duty by a deputy collector appointed to collect the taxes in eight townships. After the execution of the bond, the name of another town, making the number of townships nine, instead of eight, was inserted in the bond. This was held a material alteration of the bond by which the sureties were discharged. This was an alteration of the contract upon the face of the instrument. The alteration enlarged the liability of the sureties and the bond from the time of the alteration became voidable for that reason, as against the sureties.

There is a class of cases where the creditor did not accept the precise terms of the guaranty in contracting with the principal, or varied the terms of the contract in respect to the mode or times of payment or other risk, in which it has been held the surety was not liable.

The cases of *Henderson* v. *Marvin*, (31 *Barb.* 299;) *Walrath* v. *Thomson*, (6 *Hill*, 540;) *S. C.* (2 *Comst.* 185;) *Wright* v. *Johnson*, (8 *Wend.* 516;) *Birckhead* v. *Brown*, (5 *Hill*, 634;) and *Dobbin* v. *Bradley*, (17 *Wend.* 422,) are cases of this kind. In this class of cases the guarantor was never fixed or bound. The terms of the guaranty were never accepted or complied with by the creditor, and the default of the principal debtor was not within the terms of the contract. The case of *Bangs* v. *Strong*, (7 *Hill*, 250; 10 *Paige*, 11; 4 *Comst.* 317,) presents a case like this in one important particular, that the original liability of the surety was fixed and undoubted. In this case the creditors contracted with the principal debtor, after judgment against the principal and surety, to take lands from such principal debtor in payment of the debt at the valuation of individuals, after deducting ten per cent from the appraisement. This was held such a change of rights of

the surety as to discharge his liability. Judge Bronson says of it, (7 *Hill*, 254,) "The creditor had agreed to take land instead of money, for the whole or part of the debt."

If the surety had paid the debt and been substituted in the place of the creditor, he would only have acquired the right to receive payment in land. The surety was held discharged from the debt on the ground that his right to subrogation was impaired by the new contract.

In 4 *Comstock*, in the same case in the Court of Appeals, Judge Pratt said: "The true ground upon which the liability of the surety is discharged is that his rights against his principal are impaired or affected." This is the rule, I think, where the surety is clearly fixed and liable, and subsequent acts or agreements between the creditor and principal debtor are alleged to cut off or discharge such liability.

While the contract is executory it is, undoubtedly true that any material change or alteration of its terms destroys it and discharges the sureties, and enables him when sued upon the new substituted or altered contract, to say, *non hæc in fœdera venir.* (*Burge on Suretyship*, 214, 218.)

Questions in respect to the liability or discharge of sureties, in consequence of an alteration of the contract, have generally arisen in cases where the contract of the surety was an entire one, and the supposed variation or change of it went to the whole consideration and the whole liability. But in this case the contract of the defendant is divisible. He was liable for each quarter's rent as it fell due, and when the supposed alteration of the contract was made he had become fixed by the non-payment of the rent by the lessees, Hilliard & Bourne, for nine quarters' rent. His contract of guaranty is precisely the same, as I regard it, in legal effect, as if he were an indorser of Hilliard & Bourne upon nine promissory notes of $32.50 each, payable at the time when the said quarters' rent in arrear repectively fell due, and had been charged as such indorser by due demand and notice of non-payment. If in addi-

tion to nine such promissory notes, the lessor had taken and held two others of the same amount for the two quarters' rent, payable on the first days of July and October, 1860, would the canceling and giving up to the lessees of such two last mentioned notes, not due and payable on the said 9th day of April, 1860, discharge the defendant from his liability on the said nine over due and protested notes? If it would I agree that the discharge of Hilliard & Bourne from the payment of such rent would have the same effect. But it seems to me that such would not be the effect of the surrender of two such notes. It could not affect the defendant's liability upon the matured and overdue paper. This, in substance and legal effect, is all that the plaintiff has done in this case. He has discharged the lessees and the defendant from the payment of the last two quarters' rent upon the said lease. It is just the same as though he had received payment from Hilliard & Bourne of the last two quarters' rent before they fell due, leaving the previous nine quarters' rent unpaid. Certainly this would not discharge the defendant. There is, in fact, no alteration of the defendant's contract. On the face of the lease and the defendant's guaranty no alteration appears. There is no alteration of the terms of the contract apparent on the face of the instrument. The alleged alteration does not relate to the quarters' rent, or either of them, left unpaid. There is no new contract relating to such rent. Varying the terms of payment is taking away the defendant's right of subrogation in respect to such rent, as was the case with the new contract in *Bangs* v. *Strong*, (*supra.*) If the plaintiff had made any new contract with the lessees varying the terms of the payment of such rent, extending the time or changing the mode of payment, such new contract would have operated to discharge the defendant within that case and within the well settled rules of law.

This case, it seems to me, is not within the principle which discharges a surety upon the ground of a variation

of the contract. The defendant's rights to substitution or subrogation are in no respect impaired by the new agreement. It simply operated to discharge him from further liability, and left the rights of the plaintiff unimpaired in respect to the rent in arrear. I think the verdict should be set aside and a new trial granted, with costs to abide the event.

. JAMES C. SMITH, J. The defense which an alteration of the contract by an unauthorized agreement with the principal gives to the surety, depends for its effect, not on an alteration of the relations between the creditor and the surety, but of those which subsist between the latter and the principal. The surety is entitled at any moment after breach by the principal either to come into court to compel the performance of the engagement for which he is responsible, or to fulfill it himself and then have recourse to legal proceedings to obtain an indemnity; and any act by which these rights are impaired or the possibility of resorting to them delayed, places him in a different situation from that to which he originally looked forward, and he is therefore discharged. But an act which has no such effect does not release him from his obligation. (See 2 Am. Lead. Cas. 397.)

By the terms of the lease in the present case, the rent was payable in installments, and the claim, in suit, is for rent which accrued and became due and payable before the surrender, and while the tenant was in possession. The surrender of the lease and the release of the tenant from liability for rent for the unexpired portion of the term did not affect the relations of the surety to the principal in respect to the rents previously accrued and then due and payable. The suggestion that he may have relied on the tenant's continuance in possession during the whole term to enable him to pay the rent, is speculative. The surety might have insisted on that condition by an express

stipulation to that effect, but he did not; and in the absence of such stipulation he must be deemed to have contracted in view of the settled rule of law that a surrender of the term by the lessee, does not discharge him from any previous liability for a breach of the covenants of the lease.  I do not perceive how, in any legal view of the case, the remedies of the surety have been impaired or delayed by the surrender.

I am of opinion there should be a new trial.

JOHNSON, J. dissented.

