CHARLES A COE, Respondent, v. PATRICK CASSIDY, Appellant.

A surety for a tenant is not released as to rents subsequently accruing, because of a release or an extension of the time of payment of rent due.

Such a surety has an interest in personal property mortgaged to the landlord to secure the rent, and may call upon the latter to account, and hold him responsible therefor where he has taken possession and disposed of it.

The landlord has a right, as against the surety, to a reasonable time in which to sell the property; and so long as there is no unreasonable or unjustifiable delay the surety cannot complain.

While the mortgagee keeps the property he is bound to take reasonable care of it; and any reasonable expense to which he is subjected in the exercise of such care is a proper charge against it.

Where, in such case the landlord sold the mortgaged property at private sale to the surety, *held*, that the latter could not complain that it was sold for less than its value.

Plaintiff's grantor leased to S. & H. a distillery; the tenants assigned the lease. When the assignees made payment of rent, plaintiff receipted it as a payment by S. & H. Plaintiff took a mortgage upon the personal property put into the premises by the tenants to secure a portion of the rent. The property was needed for the purposes of the business, and was left by plaintiff for use; he was not requested by any one to remove it, and no objection was made to its remaining. Plaintiff never, by any formal act, attempted to put an end to the lease. Upon the premises becoming vacant, he employed a watchman to watch and care for the mortgaged property, attempted to sell it, and for the purpose of utilizing it sought to lease the premises. In an action against defendant as surety for the tenant, *held*, that these facts did not, as matter of law, show such a resumption of possession and control of the premises as to put an end to the lease; that at most they simply furnished evidence of a surrender for the consideration of a jury.

(Argued December 18, 1877; decided January 15, 1878.)

Appeal from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts appear sufficiently in the opinion.

*A. R. Dyett*, for appellant. Plaintiff's sale of the property at private sale to defendant, after having reduced it to possession, cannot be turned into an election to sell and authorize him to charge expenses of taking care of it in the meantime. (*Pulver* v. *Richardson*, 3 T. & C., 436.) Plaintiff, by giving up his equitable right to hold the mortgaged property as security for rent accruing after May 1, 1870, under the same lease, discharged defendant as surety *pro tanto.* (*Pitts* v. *Congdon*, 2 N. Y., 352; 42 id., 89, 98; *Lewis* v. *Palmer*, 28 id., 276; *Moore* v. *Cable*, 1 J. Ch., 385, 388; 21 N. Y., 411; *King* v. *Baldwin*, 17 J. R., 381.) The bill of sale and defeasance released the surety for past rent due November 1, 1869, and rent from that date to May 1, 1870. (2 Paige, 497; 10 id., 11, 17; 7 Hill, 250, 254; 14 Barb., 232; 3 N. Y., 446; 42 id., 89, 98; 46 id., 93; 28

id., 271, 276; 2 id., 352; 11 id., 216; Story's Eq. Jur., §§ 325, 326, 501, 639; 2 Swanst., 185, 4 J. Ch., 130; 17 J. R., 384; 2 Sim. & S., 457; 3 M. & K., 190.)

*Jno. E. Parsons,* for respondent. The agreement of November 17, 1869, extending the time for paying the rent due November 1, 1869, did not vary the terms of the lease or release defendant from any liability. (*Ducker* v. *Rapp*, MSS. of Ct. Apps., Dec. 16, 1876; *Kingsbury* v. *Williams*, 53 Barb., 142; *Ellis* v. *McCormick*, 1 Hilt., 313.) The transfer to plaintiff of the machinery, and his employing a watchman to watch it, did not cancel the lease. (*Bloomer* v. *Merrill*, 1 Daly, 485; *Smith* v. *Niver*, 2 Barb., 180; *Whitney* v. *Myers*, 1 Duer, 266; *House* v. *Burr*, 24 Barb., 525; *Bedford* v. *Terhune*, 30 N. Y., 453; *Shufeldt* v. *Gustin*, 2 E. D. S., 57; *Schieffelin* v. *Carpenter*, 15 Wend., 400–408.)

EARL, J. This is an action against the defendant, as surviving surety upon a lease, to recover the amount of rent due by the terms of the lease for the year 1870. The lessees were Schneider and Harris, the term four years from October 1, 1867, and the rent $10,000 per year, payable monthly. The defendant with one Hopke, since deceased, guaranteed the payment of the rent. The plaintiff recovered a judgment which the defendant seeks to reverse upon several grounds, which, so far as I deem it material, I will consider separately.

1. The lease provided that the lessees should, in addition to the real estate, also have the use " of the pumps, shafting and machinery in the building ; " but there was no evidence showing what machinery was in the building at the date of the lease. The lessees put a large quantity of machinery in the building, and carried on the business of distillers there until August, 1868, when they assigned the lease and sold out their property to Hopke, one of the sureties. Thereafter the business was carried on in the name of Hopke, Schneider and Harris still retaining some sort of interest in the business, until March, 1869. At the latter

date the distillery was seized by the collector of internal revenue, and the personal property was by him sold at auction to Walbridge & Co. The collector executed to the purchaser a bill of sale in which the property sold was described as "all the right, title and interest of John E. W. Hopke, in and to the distilling apparatus on the said premises, consisting of steam engine and boilers, tubs, tanks, meters, mill-stones, shafting, piping and fixtures of the said John E. W. Hopke." It does not appear that the collector sold any of the property which was in the premises at the date of the lease, and which belonged to the lessor. The property sold was such as had been placed in the building by the lessees, and which then belonged to Hopke.

In May, 1869, Hopke assigned the lease to John Dwyer, and to him also in July, 1869, Walbridge & Co. sold and transferred all the personal property purchased by them at the collector's sale. In July also Dwyer paid the rent of the premises to plaintiff to March 1, 1869. Dwyer carried on the business for some time, and continued to occupy the premises until the first day of November, 1869, when he sold and assigned the lease and the personal property purchased by him of Walbridge & Co. to one Fischer. Fischer took possession, and carried on the business to the middle of January, 1870. After that no business seems to have been carried on upon the premises.

Fischer, when he took possession, paid the rent for the months of March and April, 1869, leaving the rent for six months, from May first to November first, unpaid. To secure that rent, he executed the following instrument:

"NEW YORK, *November* 17, 1869.

Mr. CHARLES A. COE:

Bought of William Fischer one steam engine, and all other goods and chattels now in the distillery, corner John and Gold streets, Brooklyn, for the sum of five thousand dollars.

Received payment,

WILLIAM FISCHER."

And at the same time Coe executed and delivered to him the following instrument:

"Mr. WILLIAM FISCHER — Dear Sir — If the rent due me on the first inst., five thousand dollars, is paid as fast as realized every fourteen days on account, and the current rent from first instant to 1st May, 1870, is paid monthly, then I agree to resell the machinery to William Fischer for the same sum as he has this day sold it to me.

CHARLES A. COE."

It is claimed that these two instruments changed the terms of the lease, and that thereby the defendant as surety was discharged. This may be true as to the rent which fell due on and prior to November first; but after that date the rent remained payable monthly as provided in the lease; and as this action is for rent accruing for the year 1870, there was no change of which the defendant can complain. As to the rent which fell due before 1870, the plaintiff could, after default in its payment, release it or extend the time of its payment without discharging the defendant for rent thereafter to accrue. This is abundantly settled. (*Ellis* v. *McCormick*, 1 Hilt., 313; *Kingsbury* v. *Williams*, 53 Barb., 142; *Ducker* v. *Rapp*, 67 N. Y., 464.)

2. The plaintiff claimed that these two instruments constituted a sale and a conditional resale of the property, and that the only effect of them was to extinguish the rent for the six months prior to November first, and that the conditions upon which he was to resell them not having been complied with, he was in no way accountable to the defendant for the property or its proceeds. The defendant claims that these instruments constituted a mortgage upon the property to secure the rent mentioned in the last instrument. No matter what the form of the instruments is, if they were intended as security merely, they must be treated as a mortgage. Their absolute nature did not forbid parol proof to show that they were intended as a mortgage. The trial-judge submitted the evidence to the jury to determine whether

these instruments were intended merely as a security, or
whether they were intended as an absolute sale, and, as we
must infer from their verdict, they found that they were in-
tended as a security.   There was no error in submitting this
question to the jury; and even if, upon the facts, the judge
should have determined, as matter of law, that the instru-
ments constituted a mortgage, no harm was done the defend-
ant, as the jury found in accordance with his claim.   There-
fore the plaintiff must, as to this property, be treated as
mortgagee.   Upon default in payment of the rent secured,
he became the absolute owner of the property, subject only
to a right of redemption in the mortgagor.   This right of
redemption he could cut off by a sale, public or private,
fairly made.   If he made a public sale, after notice to the
mortgagor, he could be made to account only for what the
property brought at such sale.   If he made a private sale,
he could probably be compelled to account for the value of
the property if he sold it for less.   (*Stoddard* v. *Denison*,
7 Abb. Pr. R. [N. S.], 309; *Talman* v. *Smith*, 39 Barb., 390;
*Chamberlain* v. *Martin*, 43 id., 607; *Ballou* v. *Cunningham*,
60 id., 429; *Charter* v. *Stevens*, 3 Den., 33; *Olcott* v. *Tioga
Railroad Co.*, 27 N. Y., 546, 566.)   Although the defendant
was not the mortgagor, he was interested in the property,
because it had been transferred to the plaintiff to secure a
debt for which he was liable as surety.   He was in a position
to call the plaintiff to account, and to hold him responsible
for the property.   There was no particular time within
which plaintiff was bound to foreclose his mortgage.   The
defendant could probably have hastened a foreclosure if he
had requested it.   But he did not request it at any time.
Plaintiff had the right, as against the defendant, to a reason-
able time in which to sell this property, and so long as there
was no unreasonable or unjustifiable delay, the defendant
could not complain.   Whether, under all the circumstances
of this case, the property was sold as soon as it should have
been, was a question of fact which was properly submitted
to the jury by the judge.

While the plaintiff kept the property, he was bound to take reasonable care of it.   He could not, without incurring responsibility, negligently suffer it to be damaged or stolen. And any reasonable expense to which he was subjected in the care of the property was a proper charge against it. In this case the plaintiff kept it until the spring of 1872, when he sold it to the defendant for $10,000, and he paid a large sum of money to watchmen, in the meantime, for taking care of it.   Whether the care he took was reasonable and necessary, and whether the amount paid was proper and justifiable, were questions of fact for the jury, which were properly submitted to them.

The defendant cannot complain that the property was sold for too little as he purchased it, and cannot be heard to say that he purchased it too cheap.

I can perceive no evidence which would have authorized the court, as matter of law, to have charged the jury that the plaintiff was chargeable with the value of the property at any time prior to the sale to the defendant.   But as the jury gave plaintiff several thousand dollars less than the amount of rent due for the year 1870, with the interest thereon, they probably charged him with the value of the property at some time previous to the sale, or disallowed the whole or a portion of his charge for taking care of it.

3. The further claim is made that the premises had been surrendered to the plaintiff, and that therefore the defendant was discharged from his liability for the rent.

I can perceive no evidence upon which the court could have held, as matter of law, that there was a surrender.   The evidence tends to show that the plaintiff did not intend to release his lessees from liability for the rent.   When he took payment of the rent from the assignees of the lease, he always receipted it as a payment by Schneider & Harris, thus evincing his purpose not to accept any one but them as his tenants.   He never excluded the lessees or their assignees from the possession of the premises.   He never by any formal act put an end to the lease, or attempted to do so.

He took a mortgage of the personal property put upon the premises by the tenants. He left it there for use by his tenants or their assignees. He was never requested by any one to remove it, and neither the defendant nor any of the tenants objected to its remaining there. It was property needed for use with the premises as a distillery. The premises being vacant, he employed a watchman to watch and take care of this property, and he attempted to sell the personal property, and, for the purpose of utilizing it, to lease the premises. But all these acts and the others of less importance disclosed in the evidence, did not in law show such a resumption of the possession and control of the premises as to put an end to the lease. They at most furnished evidence from which a jury might have inferred a surrender, and all the facts were submitted to the jury under a charge which is free from just exception. The jury must have found that there was no surrender, and we cannot well see how they could have found otherwise.

4. The views thus far expressed show that the motion to nonsuit was properly denied, and also dispose of the exceptions to the charge, and to the refusals to charge as requested on the part of the defendant. The law and the facts were fairly and with sufficient fullness submitted to the jury.

5. I have carefully examined the various exceptions to the rulings of the judge, upon questions of evidence taken during the trial, and it is sufficient to say that no error was committed to the prejudice of the defendant.

The judgment must be affirmed, with costs.

All concur.

Judgment affirmed.