<hr />

### MOORE v. PRENTISS TOOL & SUPPLY CO.

*(Superior Court of New York City, General Term. July 2, 1891.)*

**1. CONVERSION OF MORTGAGED CHATTELS—RIGHTS OF PURCHASERS.**

The Y. Co. executed a mortgage to J. on certain chattels, and thereafter executed another mortgage on the same property to plaintiff. After the execution of these mortgages, the Y. Co. sold the mortgaged property to defendant, who took possession thereof. Plaintiff, the junior mortgagee, after such sale, foreclosed his mortgage, bought in the property, and instituted this action to recover for the conversion thereof by defendant. After the bringing of this action, defendant entered into an agreement with J., the senior mortgagee, by which his mortgage should be considered to be due. J.'s mortgage was then foreclosed, and defendant purchased the property, and served an amended answer in this action setting up that fact as a defense. *Held,* that defendant acquired no rights by its purchase under J.'s mortgage, which could affect plaintiff's right to recover in this action instituted prior to defendant's purchase.

**2. SAME—EVIDENCE.**

In such case evidence offered by defendant, of an agreement between plaintiff and the Y. Co. that plaintiff should furnish the Y. Co. money wherewith to carry on its business, and that plaintiff had failed to comply with that contract, was inadmissible, because, if any such breach of contract existed, it was one which could only be complained of by the Y. Co., and could not be availed of by defendant, in the absence of any assignment to it by the Y. Co. of its right of action for the breach.

**3. SAME—REFUSAL TO DELIVER POSSESSION.**

The refusal of defendant to deliver possession of the property on the written demand of plaintiff after his purchase at the foreclosure sale under his mortgage, and the declaration of defendant's attorney and agent that it proposed to hold on to the property, and that plaintiff could not have it, sufficiently showed a conversion by defendant of the property in question.

Appeal from jury term.

Action by Frederic G. Moore against the Prentiss Tool & Supply Company. From a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial, defendant appeals.

Argued before FREEDMAN, DUGRO, and GILDERSLEEVE, JJ.

*John M. Perry,* for appellant.  *Phillips & Avery,* for respondent.

GILDERSLEEVE, J.   On or about September 21, 1889, the Yonkers Brass-Works, a copartnership carrying on a brass moulding business, in the city of Yonkers, executed to one Leonidas C. Jewett a chattel mortgage, to secure the payment of a promissory note for $1,200 payable in 12 months from said 21st day of September, 1889.   This mortgage covered a large number of chattels in the possession of the Yonkers Brass-Works.  Subsequently, and on or about the 28th day of October, 1889, the said Yonkers Brass-Works, being indebted to the plaintiff in the sum of $2,350, executed a chattel mortgage to secure this indebtedness to the plaintiff, which mortgage covered the same chattels that were covered by the Jewett mortgage.   On November 12, 1889, the said Yonkers Brass-Works executed a bill of sale of all the chattels covered by the two mortgages to the defendant, and at the same time delivered to the defendant a key of the factory in which said chattels were contained, and the defendant thereupon took possession of said chattels.  Both of said mortgages, to Jewett and the plaintiff, had been duly filed.   On the 27th day of November, 1889, the plaintiff's mortgage became due, but was not paid; whereupon the plaintiff, on the 5th day of December, 1889, foreclosed his said mortgage, and at the sale—which took place in front of the premises of the Yonkers Brass-Works, in which the chattels were, the key to said premises being in the possession of the defendant or its agent—the plaintiff bought in the property, and then demanded of Mr. Perry, who represented the defendant at said sale, the key to the premises, which was in the possession of said Perry, so that plaintiff could take possession of the chattels.   The defendant's said representative, however, refused to give up the key, and declined to allow the plaintiff to take the said chattels, claiming that they belonged to the defendant.   On December 10, 1889, plaintiff made both an oral and written demand upon the defendant to deliver or give up the said chattels to the plaintiff.   On December 30, 1889, the plaintiff, being unable to obtain possession of the said chattels, commenced this action for conversion.  After this action was so commenced, and on the 21st day of February, 1890, and after the defendant had appeared and answered the complaint, the Jewett mortgage was assigned to one Roy; and, on or about the 24th day of February, 1890, the defendant and said Roy made an arrangement, by which the said Jewett mortgage should be considered then due.   On the 28th day of February, 1890, the said Jewett mortgage was foreclosed, the chattels covered by it sold, and the defendant became the purchaser, whereupon it served an amended answer setting up this fact as a defense.   Prior to the foreclosure of plaintiff's mortgage a fire had taken place at the factory of the Yonkers

Brass-Works, in which the chattels covered by the two mortgages were, and some damage done to the chattels; but the preponderance of evidence is to the effect that the value of the chattels was abundantly sufficient to cover both mortgages.

The defendant acquired no rights that can affect the issues in this action by the purchase of the chattels in question at the sale under the foreclosure of the Jewett mortgage, which mortgage had been previously assigned to said Roy, and which, although by its terms not, yet due, was considered due by virtue of the arrangement entered into between the defendant and said Roy. Whatever right of action the plaintiff had, at the time of the service of the summons and complaint herein, could not be taken away from him without his knowledge or consent. *Livermore* v. *Northrup*, 44 N. Y. 112. The plaintiff was not a party to said agreement between Roy and defendant, and did not directly or indirectly acquiesce therein or assent thereto. It was not claimed at the trial below, nor upon the argument at general term, that the Yonkers Brass-Works did not have a good title to the chattels in question, at the time they executed and delivered the mortgage to the plaintiff, and did not have the lawful right to execute said mortgage, subject, of course, to the prior lien of the Jewett mortgage. The subsequent bill of sale of the chattels in question by the plaintiff's mortgagor to the defendant, although it did not specify in any way or recognize the plaintiff's mortgage, cannot and did not deprive the plaintiff of any rights under said mortgage. The defendant's rights to the chattels in question were acquired by the bill of sale executed by the Yonkers Brass-Works, and delivered to the defendant, with full knowledge and notice of the existence of both the Jewett mortgage and the plaintiff's mortgage, as both had been duly filed. If defendant wished to retain possession of the property, it could hope to do so only after satisfying the claims of said mortgagees.

It is conceded that the Yonkers Brass-Works owed the plaintiff, at the time of the execution of said mortgage to the plaintiff, the sum of $2,350. The mortgage seems to have been in proper form. No objection has been taken to its sufficiency in that regard, nor to the regularity of its execution and filing. We quote from the mortgage as follows: "* * * for securing the payment of the indebtedness hereinafter mentioned, and, in consideration of the sum of one dollar to them [Yonkers Brass-Works] duly paid * * * have bargained and sold," etc., "upon condition that if we, the said parties of the first part, [Yonkers Brass-Works] shall and do well and truly pay unto the said party of the second part, [plaintiff,] his executors, administrators, or assigns, the sum of $2,350.00, within 30 days from this date, then these presents shall be void," etc. No other or further consideration than as above set forth is expressed in said mortgage, nor is any condition imposed, except the foregoing. If the mortgage to the plaintiff was what it purports to be on its face; if it was properly foreclosed; and if there was sufficient evidence to justify the jury in believing that there was a conversion of the chattels in question by the defendant,—the judgment and order appealed from should be affirmed. But the defendant claims that there was more to the mortgage than appears upon its face. It alleges that the mortgage was given to the plaintiff by the Yonkers Brass-Works "upon the express understanding and condition that the plaintiff should, within the time mentioned in said instrument, to-wit, thirty days from its date, start and establish the persons composing the Yonkers Brass-Works, or furnish the means for the persons to start and establish the business formerly carried on by them at said city of Yonkers;" and that plaintiff has failed to comply with this condition.

The principal error assigned by defendant, and the one upon which he mainly relies for a reversal of the judgment herein, is the refusal of the court below to permit the defendant to show the foregoing alleged understanding and condition. When the plaintiff was on the stand, the defendant undertook,

upon cross-examination, to show a conversation that took place between the plaintiff and his mortgagors at the time the chattel mortgage now under consideration was given. In the midst of this line of examination he was interrupted by the court, as follows: "*Court.* I see you have a defense of that kind. The court is of opinion that the facts stated in your third defense [that being the defense last above indicated] do not constitute a defense. That would not constitute a defense, conceding that he did promise to advance the money to continue the business, if they would give him a chattel mortgage; the promise was made without consideration. *Defendant's Counsel.* I shall endeavor to show that the chattel mortgage was given in consideration of that promise. *Court.* The chattel mortgage does not contain that consideration. *Defendant's Counsel.* It says 'a consideration,' and I can show that it was different from the one mentioned in the instrument. I offer by the line of questions which I have been pursuing to prove, or attempt to prove, that a part of the consideration for the giving of the alleged chattel mortgage, under which he claims, was a promise on his part to start in business again the persons who gave the chattel mortgage, before the expiration of the time mentioned in the mortgage. *Plaintiff's Counsel.* I object to that line of proof. *Court.* You say, 'To start in business again.' Do you mean by advancing more money or goods? *Defendant's Counsel.* No; the bald statement that he was to start them up in business again, if they gave him the chattel mortgage. *Court.* The objection is sustained." To this ruling the defendant's counsel duly excepted. Subsequently, and after the plaintiff had rested his case, the defendant, as a part of its defense, called one Siebert, one of the members of the copartnership known as the "Yonkers Brass-Works," and who signed the mortgage in question, and asked him the following questions: "*Question.* Was there any condition attached to the giving of that mortgage? *Q.* Was there any consideration for the giving of that mortgage other than the consideration expressed in the instrument?" To both of these questions plaintiff's counsel objected, and the court sustained the objections, and defendant's counsel duly excepted. It will be observed that defendant's counsel relied upon "the bald statement that he [plaintiff] was to start them [the Yonkers Brass-Works] up in business again, if they gave him a chattel mortgage." Defendant's counsel would not state whether the "start up" was to be by advancing money or goods. It does not appear that it was intended that the original delivery of the mortgage in question was to be conditional. The defendant's claim is that an agreement, which was to take effect thereafter, was orally made between the plaintiff and the Yonkers Brass-Works, at the time of the execution of said mortgage. The question here presented is not on the admission of parol evidence to explain, vary, or contradict a written instrument, nor is it a question as to the admission of parol evidence tending to establish an independent agreement. No agreement between the plaintiff and the defendant is claimed. The defendant in this action cannot avail himself of a breach of contract, if any such existed, between plaintiff and the Yonkers Brass-Works. We are of the opinion that, if such an agreement existed, and was a part of the consideration for the mortgage in question, it would not be a defense here. The Yonkers Brass-Works might maintain a separate action for the damage, if there had been a violation of such a covenant. If the Yonkers Brass-Works ever had any such right, they do not appear to have transferred it to the defendant, or any other person, by assignment or otherwise; and the right, therefore, rests with them, and with them only. *Lasher* v. *Williamson*, 55 N. Y. 619; *Bellows* v. *Folsom*, 2 Rob. (N. Y.) 138. Even if the defendant's claim that a part of the consideration was to start the Yonkers Brass-Works in business again be correct, the contract between the plaintiff and the Yonkers Brass-Works would not fail, as the rest of the consideration was good,

to-wit, the existing indebtedness; and the Yonkers Brass-Works' remedy would be a separate action against the plaintiff for damages. *Bellows* v. *Folsom, supra.* Defendant only claims that the agreement, if such existed, to start the Yonkers Brass-Works in business again, formed "a part of the consideration." The rulings of the trial court upon this question were proper. The plaintiff became entitled to the property described in said mortgage upon the 27th day of November, 1889, the day said mortgage fell due and was not paid, subject, of course, to the Jewett mortgage, not yet due. Jewett was not in possession of the property, nor was he entitled to the possession. The Yonkers Brass-Works, the mortgagor, having defaulted in payment, the conditional title in the plaintiff, the mortgagee, became absolute, leaving to the mortgagor, or his assigns, only a right of redemption in equity. *Campbell* v. *Birsch*, 60 N. Y. 214, 218. *Coe* v. *Cassidy*, 72 N. Y. 133, 138; *Judson* v. *Easton*, 58 N. Y. 664; *Bragelman* v. *Daue*, 69 N. Y. 69, 74. The rule is the same where the mortgagee is not in possession. See *Bragelman* v. *Daue, supra.*

There is abundant evidence to justify the conclusion that the defendant was in possession of the property at the time of the foreclosure of plaintiff's mortgage. On the day following the maturity of plaintiff's mortgage, the defendant actually sold a portion of the property covered by plaintiff's mortgage; the foreclosure sale under the plaintiff's mortgage took place in front of the Yonkers Brass-Works, at Yonkers; the defendant was represented at the sale by its attorney, Mr. Perry; a demand for the key was made by the plaintiff upon said Perry, who refused the plaintiff admission to the building, where the chattels were, and stated that the goods and chattels belonged to the defendant; the sale proceeded in front of said premises of the Yonkers Brass-Works, where said goods were, and they were bought in by plaintiff, but defendant refused to allow the plaintiff to take possession or to enter said building. On December 10, 1889, plaintiff served a written demand on the defendant for said chattels. The representative of the defendant refused to comply with said demand, saying: "You can't have it; it belongs to the Prentiss Tool & Machine Company. I propose to hold on to it." Plaintiff said: "Do you mean to rob me?" Defendant's representative and agent replied: "I do not know anything about that, but we propose to hold onto that property." The facts also indicate clearly a demand for the property upon the defendant, and its refusal to surrender the same,—two facts necessary to be established by the plaintiff to entitle him to maintain this action. These facts, together with the other evidence in the case, show a conversion of the property in question by the defendant. After demand, the defendant exercised dominion and control over the property, asserted its title thereto, and said to the plaintiff: "You can't have it." *Pease* v. *Smith*, 61 N. Y. 477, 481; *Heald* v. *McGowan*, 5 N. Y. Supp. 450–452. If the case were free from acts of the defendant indicating an exercise of ownership, we think the words of defendant might safely be relied on to constitute conversion. In *Gillet* v. *Roberts*, 57 N. Y. 28, Judge EARL, in the course of his opinion, says: "It is true that, to constitute a conversion, a manual taking is not necessary; but where words are relied upon, they must be uttered under such circumstances, in proximity to the property, as to show a defiance of the owner's right, a determination to exercise dominion and control over the property, and to exclude the owner from the exercise of his rights." The rights to the property that defendant had were acquired, as we have already said, with full notice of both the Jewett mortgage and plaintiff's mortgage, and it is no hardship to the defendant to subject it to the operation of those instruments. Several exceptions to the admission and rejection of evidence, not heretofore noticed, were taken by the defendant. They were not, however, urged upon the argument here. We have examined them, but do not

consider them of sufficient importance to require discussion here.   There are, for the reasons stated, no grounds for the reversal of the judgment and order appealed from.   They must therefore be affirmed, with costs.