John D. Ducker et al. Trustees, etc., Respondents, *v.* John H. Rapp, Administrator, etc., Appellant.

R., defendant's testator, guaranteed the payment of rent by lessees of plaintiffs' testator. By the terms of the lease the rent was to be paid in quarterly installments. Two installments falling due May and August, 1874, not having been paid, plaintiffs brought separate actions therefor against the lessees, perfected judgments upon inquests October 6, 1874, and immediately issued executions. Thereafter, on the same day, an order was obtained and served staying plaintiffs' proceedings on the judgments for the purposes of a motion to open the defaults. Upon the motion an order was made allowing defendants to defend, the judgments and executions, however, to stand as security. A stipulation was then entered into between plaintiffs' attorney and the lessees, that the executions should be countermanded and all proceedings on one of the judgments stayed until November 25, 1874, and on the other until January 10, 1875, when the lessees promised to pay the same, with all sheriff's fees, plaintiffs being authorized to collect rents from sub-tenants and apply in payment of the judgments. In an action upon the guaranty, *held,* that, assuming the judgments to be valid (and they must be so regarded after the stipulation by which any defence was waived), the stipulation operated to postpone the payment of the rents so as to prevent their collection in any form until the days specified; that the agreement to extend the time was for a good consideration; and that the surety was thereby discharged.

It was also provided in the stipulation that, in case legal proceedings were commenced to collect the rent due November 1, 1874, the time for defendants to answer should be extended until February 5, 1875. *Held,* that thereby plaintiffs put it out of their power to procure a judgment for over ninety days after the rent accrued; that the provision would have bound the surety in case he had paid the rent; that the intent was to postpone payment and that the surety was discharged from the payment of this installment.

Plaintiffs sued to recover the rent as executors; they should have claimed as trustees. *Held,* that the same persons being entitled to recover, although in a different capacity, the manner of commencing the actions did not impair the validity of the agreement.

It was objected that plaintiffs' attorneys had no authority to make the stipulation. It appeared that one of the plaintiffs was present and consented thereto. *Held,* that it was to be presumed that the attorneys were employed to collect the rents under the will of the testator, and their mistake in attempting to recover in the name of plaintiffs as executors instead of as trustees did not impair the acts within the scope of their

authority, and that the presence and assent of one of the plaintiffs rendered it unnecessary to consider the extent of their authority.

*It seems,* that the withdrawal of the executions did not of itself, under the circumstances, operate to discharge the surety *pro tanto.*

Also *held,* that the stipulation did not impair the obligation of the surety as to other installments than those specified.

(Argued November 24, 1876; decided December 12, 1876.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York in favor of plaintiffs, entered upon an order overruling defendant's exceptions and directing judgment upon a verdict.

This action was brought upon a guaranty executed by John H. Rapp, defendant's testator guaranteeing the payment, on the part of the lessees, of the rent reserved in a lease of certain premises in the city of New York.

The lease was executed by and between Melchoir Ducker, plaintiffs' testator as lessor, and Richard Doane and others, as lessees; it was for a term of five years, from May 1, 1870, at a yearly rent of $6,000, payable in quarterly payments thereafter. Mr. Ducker died July 17, 1871, leaving a will. In and by said will the plaintiffs herein were appointed executors and executrix, and were made trustees of an express trust, among other things, to collect the rents of the premises in question. The lessees failed to pay the rent due under the lease for the quarters ending May 1, August 1 and November 1, 1874, and February 1, 1875. The lessor, Rapp, died in January, 1874, leaving a will, and defendant was appointed administrator, with the will annexed.

The plaintiffs herein brought separate suits, as executors, against the lessees to recover the installments of rent which fell due in May and August, 1874. Answers were put in and inquests were taken in both of the actions against the defendant, and judgments were perfected thereon on the same day and executions issued. Upon the same day an order to show cause why the defaults should not be vacated, and meanwhile staying plaintiffs' proceedings, was granted. This was served after the executions were issued. Upon hearing the motion,

on October 9, 1874, leave was given to the defendant to come in and defend, the judgments and executions, however, to stand as security. On the 21st October, 1874, plaintiffs' attorneys and the lessees entered into a stipulation, John D. Ducker, one of the plaintiffs, being present and assenting. The stipulation was as follows:

"No. 1.   $1,705.57.

"John D. Ducker and others, Executors, etc., Plaintiffs, *v.* Richard Doane, Luman B. Wing and others, Defendants.

"No. 2.   $1,678.01.

"Same *v.* Same.

"It is hereby stipulated by and between the plaintiffs and the defendants, as copartners, and the defendant Wing, individually, and their respective attorneys, as follows:

"*First.* The executions in each of said actions are to be countermanded within one day after the date of this instrument.

"*Second.* All proceedings upon the first judgment herein, are to be stayed until the 25th of November, 1874, and upon the second judgment, until the 10th day of January, 1875.

"*Third.* In case legal proceedings are commenced to collect the rent claimed to be due and payable November 1, 1874, for the premises described in the complaint herein, the time for defendants to answer the complaint therein shall be extended until the 5th day of February, 1875.

"The foregoing stipulations, on the part of the plaintiffs, are conditioned upon the observance by defendants of the following stipulations on their part:

"*First.* The defendants will pay to plaintiffs, or their attorneys, on the 25th day of November, 1874, the judgment in the first above action, with interest, less the sum of forty-one dollars and sixteen cents ($41.16), paid as per order, entered October 9, 1874.

"*Second.* The defendants will pay to plaintiffs or their attorneys, on the 10th day of January, 1875, the judgment in the second of said actions, with interest, less the sum of forty-one dollars and sixteen cents ($41.16), paid as per same order.

"*Third.* Defendant Wing hereby empowers plaintiffs or their attorneys, at their option, to collect from his tenants on said premises, any rent which may hereafter become payable, up to and including rents payable the 1st day of February, 1875, from said tenants, on account of said premises or any part thereof, the same to be applied, if collected as aforesaid, toward the payment of said judgments, in their order as above stated.

"*Fourth.* All sheriff's fees, if any already accrued, are to be paid by defendants.

"It is hereby stipulated and agreed that in case either party violates the above stipulations, or any of them upon their part, then the other party shall not be bound or prejudiced by the above stipulations made on their part, or shall be bound or prejudiced in any manner, and are to have the same rights as if this instrument had not been executed.

"In witness whereof we have hereunto set our hands this 21st day of October, 1874.

"DIXON, WHITLOCK & ANDERSON,

"*Plaintiffs' Attorneys.*"

In accordance with said stipulation, proceedings in the suits were stayed and the executions countermanded, and plaintiff Ducker proceeded to collect the rents from the sub-tenants. The amounts so collected were deducted from the amount due under the lease, the recovery here being for the balance.

Upon the trial defendant's attorney requested the court to instruct the jury, among other things, that the stipulation operated to discharge defendant; that it had that effect at least as to the three installments of May, August and November, 1874. That the omission of plaintiffs to collect the judgments, and the countermand of the executions operated to discharge defendant for the two quarters' rent. The court refused the request and directed a verdict for plaintiffs for the amount unpaid, to which defendant's counsel duly excepted.

*Edward M. Shepard* for the appellant. The extension of time granted by the plaintiffs as to the rent for May and

August and as to the time to answer discharged the surety. (*Bangs* v. *Strong*, 7 Hill, 250; 4 N. Y., 315; *La Farge* v. *Herter*, 11 Barb., 163; *Merritt* v. *Seaman*, 6 N. Y., 168; *Sheldon* v. *Hay*, 11 How. Pr., 11; *Worden* v. *Worthington*, 2 Barb., 368.) The court will not inquire whether by such extension of time or change of the contract defendant has been damaged. (*Miller* v. *McCoun*, 7 Paige, 452; *Bangs* v. *Stevens*, 7 Hill, 250; *Rathbun* v. *Warren*, 10 J. R., 587; *Hoffman* v. *Hurlbert*, 23 Wend., 377.) A surety is held merely to the letter of his undertaking. (Burge on Surety-ship, 10; *Grant* v. *Smith*, 46 N. Y., 93.) The release by plaintiffs of the lien of their executions upon the personal property of defendant Wing discharged the surety to the extent of the value of this lien. (*Hayes* v. *Ward*, 4 J. Ch., 129; *Mimcervics* v. *Gahn*, 3 Paige, 614, 649; *La Farge* v. *Herter*, 4 Barb., 346; 11 id., 159, 166; *Baker* v. *Briggs*, 8 Pick., 122; *Comm.* v. *Hass*, 16 S. & R., 252; *Smith* v. *Orser*, 45 N. Y., 132; *Roth* v. *Wells*, 29 id., 471; 2 R. S., 365, §§ 13, 17.)

*Joseph M. Dixon* for the respondents. The agreement by the plaintiffs in the actions against the lessees being made without authority, did not affect the rights of the plaintiffs in this action. (1 Pars. on Con. [6th ed., m. p.], 121; *Parsons* v. *Lyman*, 5 Blatch., 170; *Wood* v. *Brown*, 34 N. Y., 337; *Quackenbos* v. *Southwick*, 41 id., 17.) There was no valid consideration for the agreement. (*Reynolds* v. *Ward*, 5 Wend., 501; *Keeler* v. *Bartine*, 12 id., 110; *Tryon* v. *Jennings*, 22 How., 421.) A creditor is not obliged to sue a principal until requested to do so by the surety. (*Singer* v. *Troutman*, 49 Barb., 182; *Remsen* v. *Beekman*, 25 N. Y., 552; *Clarck* v. *Sickler*, N. Y. Weekly Digest, April 7, 1876.) Mere delay or indulgence does not release the surety. (*Dorlon* v. *Christie*, 39 Barb., 610; *Thompson* v. *Hall*, 45 id., 214; *Reynolds* v. *Ward*, 5 Wend., 501; *Bk. of Utica* v. *Ives*, 17 id., 501; 2 Story on Con., § 874; *McKecknie* v. *Ward*, 58 N. Y., 541.) The surety's liability became fixed immediately on the lessee's default. (*McKenzie* v. *Farewell*, 4 Bosw., 192;

*Turnure* v. *Hohenthal,* 36 N. Y. Supr. C. R., 79 ; *McKecknie*
v. *Ward,* 58 N. Y., 541.)

CHURCH, Ch. J. This action is brought upon a guaranty
by defendant's intestate to secure the payment of rent by
lessees of plaintiffs' testator for certain premises in New York
city. The amount claimed is for the rent due in May,
August and November, 1874, and February, 1875.

The defense relied upon is, that the surety was discharged
by certain transactions between the plaintiffs and the princi-
pal debtors. It seems that, for the rent due in May and
August, actions had been commenced by the plaintiffs, as
executors of the testator, and issues had been joined, and judg-
ments were entered October 6, 1874, upon inquests at the
Circuit. The same day an order was obtained staying plain-
tiffs' proceedings upon these judgments until a motion could
be made to open the defaults, but before the order was served
executions had been delivered to the sheriff. Upon the hear-
ing of the motion, an order was made allowing defendants to
defend the actions, but permitting the judgments and execu-
tions to stand as security. A stipulation was then entered
into between the plaintiffs' attorneys and the principal debtors
(the defendants in said judgments), the terms of which, it is
claimed, discharged the surety. The stipulation provided :
First. That the executions should, within one day, be counter-
manded. Second. That all proceedings upon one of the judg-
ments be stayed until the 25th day of November, 1874, and
upon the second judgment, until the 10th day of January,
1875. Third. That, in case legal proceedings were com-
menced to collect the rent due November 1, 1874, the time
for the defendants to answer the complaint should be extended
until the 5th day of February, 1875. The defendants agreed
to pay the judgments on the 25th of November, 1874, and
10th of January, 1875, respectively, and to pay all sheriff's
fees accrued ; and the plaintiffs were authorized to collect
rents from sub-tenants and apply the same in payment of
the judgments.

Several questions are presented: First. Assuming that, by the terms of the stipulation, the time of payment is extended, is the agreement supported by a sufficient consideration? The stipulation gave the plaintiffs a benefit or advantage in authorizing them to collect of the sub-tenants and apply the amounts upon the judgments. This was in the nature of additional security. It gave the plaintiffs the benefit of the personal responsibility of the sub-tenants, to the extent of their liability to the principal debtors, which the evidence tends to show was between $4,000 and $5,000 a year. The payment of the sheriff's fees upon the countermand of the executions, and the waiver of the right to defend, were also items of consideration; nor do I think that the manner of commencing the action impaired the validity of this agreement. The plaintiffs in the actions described themselves as executors, and claimed to recover the rents as such, while they should have claimed to recover as trustees and widow. The same persons were entitled to recover, although in a different capacity from that claimed; and any agreement by these persons, in respect to the rent or the judgments obtained therefor, was binding and valid. These persons, and no others, had power to act. They were both executors and trustees by the same will, and the mistake in professing to act in one or the other of these capacities appears to me to be a formal rather than a substantial matter, so far as the question of the validity of this agreement is concerned. The agreement, in either form, would inure to the benefit of the proper *cestuis que trust*, and if the rents were received by the plaintiffs as executors, they would be obliged to apply it as trustees. The defendant waived all objection to the judgments on that ground, and it is very clear that the payment of these judgments would have discharged all claim by the plaintiffs, as trustees or otherwise, for the rents.

The objection that the attorneys of the plaintiffs in the judgments had no authority to make this stipulation is answered by the fact that one of the plaintiffs was present when it was made, and assented to it, and this one had the

principal management of the business. It is presumable, also, that these attorneys were attorneys for the plaintiffs for the collection of these rents, under the will of the testator, in any capacity which the law would justify, and their mistake, in attempting to recover in the name of the plaintiffs, as executors instead of trustees, should not impair their acts within the scope of their authority; and the fact alluded to, of the presence of one of the plaintiffs, renders it unnecessary to consider the extent of their authority as attorneys in the actions. It follows that the agreement was valid.

The important, and somewhat difficult, question is to determine the true construction of this contract. If it operated to postpone the payment of the rents, so as to prevent their collection in any form, until the specified days, then the surety was precluded, if he had paid them, from prosecuting the principal debtors before that period, and, upon familiar principles, was discharged. An ordinary stipulation during a litigation to extend the time to answer would not affect a surety, nor would any agreement for indulgence to pay, or otherwise, unless it was founded upon a good consideration, and operated to prevent the collection of the demand in any form. Assuming that these judgments were valid, and they must be so regarded after the stipulation by which any defence was waived, and assuming that, so far as the question involved in this action is concerned, they must be regarded in the same manner as if the plaintiffs had prosecuted, formally, as trustees instead of as executors, as we must, from the above views, regard them, could the plaintiffs have discontinued these actions and commenced other actions for the recovery of these rents before the expiration of the times specified? It seems to me not. The evident intent of the parties was to postpone the payment of the May and August rent for which these judgments had been recovered. True, the language is that all proceedings be stayed upon the judgments, but, looking at the substance of the transaction, it is evident that the parties intended to agree to postpone payment until the times specified. If the plaintiffs had commenced another action for

these rents as trustees, the former judgments and stipulation would have been a good defence, and the plaintiffs would not have been permitted to allege that they sued in the wrong capacity. As long as the defendants in the judgments could not complain, and those for whom the plaintiffs acted could not be injured or prejudiced, no court would permit parties, upon a mere technical formality, to violate an agreement to the injury of other parties. It is too late, strictly speaking, for a plaintiff to *discontinue* an action after judgment. He may satisfy it, but not to retain an enforceable interest in the cause of action, without leave of the court, The defendant had an interest and right, for which he had paid a valuable consideration, which was directly in conflict with the right of the plaintiffs to otherwise prosecute for these rents. The defendant had paid value for indulgence, and he was legally entitled to it. The two installments for rent were merged in the judgments, and the agreement to stay proceedings was like a valid agreement not to sue, which operates as a release of the surety. (Theobald on Prin. and Surety, 112.) If the plaintiffs could not have sued during the period of suspension, according to the terms of this stipulation, the surety could not, by paying, have sued his principal. The surety, upon payment, is subrogated to the rights of the creditor, but only to his rights; and if the creditor has bound himself by any transaction with the principal debtor, which prevents the surety, upon payment, from immediately prosecuting the principal debtor, the former is discharged. Any valid and binding agreement whereby the surety may be deprived of or delayed in the assertion of his equitable claim to pay the debt, and become subrogated to the rights and remedies of the creditor, if made without the assent of the surety, will discharge him. (10 Paige, 11.) When time is given to the principal debtor, though but for a single day, the surety is discharged. The surety, when he pays the debt, must have an immediate right of action against the principal, and that right cannot be postponed for any period, however short, by the creditor without discharging the surety. (1 Hill, 250.)

By applying these principles to the transaction, we feel constrained to hold that the surety was discharged from the payment of the May and August installments which were included in the judgments. The stipulation in respect to the rent due November 1, 1874, is peculiar; it is, that in case legal proceedings are commenced to collect the rent, the time for defendants to answer shall be extended to February 5, 1875. The plaintiffs, by this provision, put it out of their power to procure a judgment for the November rent for over ninety days, and I am unable to see, within the principles alluded to, why the surety, if he paid the rent and attempted to prosecute, would not be bound by it. He would, as we have seen, be subrogated to the rights of the plaintiffs in prosecuting the principal debtor. He would be entitled to all their rights and remedies, but nothing more, and he would be subject to all their disabilities arising out of any binding contract. If the plaintiffs were bound to give the delay, the surety would be, and, as the arrangement might have been injurious to the surety, it discharged him.

That this extension of the time to answer was not for any legitimate purpose of putting in a defence is patent. Actions had before been commenced and answers put in, and there is no intimation or probability, in fact, that any other or different answer was contemplated. It is unusual to agree in advance to give a party time to answer, and then the length of time (over three months) is significant of an intention to postpone payment. It may be that the surety has not been injured by this transaction, but it is such an interference with and change of the contract, for the performance of which the surety became bound, that the law implies injury. In the language of Lord ELDON: "I cannot try the cause by inquiring what mischief it might have done, for that would go into a vast variety of speculation upon which no sound principle could be built." (2 Ves., Jr., 542.) Another reason is, that the surety agreed to become bound for the performance of a particular contract, and not for another or different one. In this case he agreed that the lessees should pay the rent on the

1st November, 1874, and not on the 5th February, 1875 ; and there is no power to hold him to an agreement which he never made.

The withdrawal of the execution is claimed to be a release of the security which, *pro tanto,* operated to discharge the surety.

This question is comparatively unimportant in view of the points before decided, but the security which the execution furnished is too unsubstantial to affect the obligation of the surety. At the time of the stipulation the principal debtor had a right to defend the actions, and the plaintiffs could not have succeeded in a contest without an amendment of the summons and complaint in each action. Whether this would have justified an amendment of the executions, and if. so, whether the constructive lien would have dated from the original delivery, or from the time of amendment, are questions of too much doubt and uncertainty to render it proper to give any substantial value to the executions as securities, the withdrawal of which would be injurious to the surety.

The rent due 1st February, 1875, included in this action, is not affected by the stipulation. Each installment of rent was a separate and independent demand, and an extension of the time of payment of one would not impair the obligation of the surety as to the others. The judgment must be reversed and a new trial granted, costs to abide the event, except that neither party is to recover costs as against the other in this court, if the plaintiffs succeed in recovering sufficient to carry costs.

If the plaintiffs stipulate to reduce the judgment by deducting the May, August and November rent, then the judgment is affirmed for the balance, without costs to either party as against the other in this court.

All concur.

Judgment accordingly.