### BLACKWELL v. BAINBRIDGE et al.

#### (City Court of New York, General Term. July 1, 1892.)

RELEASE OF SURETIES—EXTENSION OF TIME—CONSIDERATION—EVIDENCE.

In an action in the circuit court of the United States, defendants moved to set aside a report of a referee, and executed an undertaking, with sureties, conditioned to pay all costs if the report was not vacated. Defendants then obtained an extension of time in which to serve a bill of exceptions, but failed to secure a continuance of stay of entry of judgment, and judgment was entered, pending a motion by defendants for leave to serve a bill of exceptions *nunc pro tunc;* and, while it was in dispute between the parties whether defendants had lost their right to review the judgment, an agreement was entered into between them by which defendants would, in a certain contingency, be absolutely released from the judgment, the agreement being meantime held by defendants' counsel in escrow. *Held,* that the pendency of the question as to defendants' right to review the judgment, and an agreement to exchange releases of mutual claims, were a sufficient consideration for the escrow, and that, as the same operated as an extension of time to defendants, the sureties on this undertaking were thereby released.

Appeal from trial term.

Action by Frank E. Blackwell against John G. Bainbridge and others. From judgment for plaintiff, defendants appeal. Reversed.

Argued before McGOWN, VAN WYCK, and FITZSIMONS, JJ.

*D. Leventitt* and *J. W. Monks,* for appellants.    *William C. Timm,* for respondent.

VAN WYCK, J. The plaintiff claims by assignment from the firm composed of Willy Wallach and Edgar S. Blackwell, which will hereafter be called Wallach & Co., and the action is against defendants, as sureties upon an undertaking for costs of $1,052.75, as taxed; the condition being that, if a certain report of the referee is vacated, set aside, or the new trial is granted, then the undertaking is to be void. This report was made by a referee to hear and determine an action in the United States circuit court, brought by one Maurice Lilienthal against the firm of Wallach & Co., to recover about $12,000, and in which Wallach & Co. set up a counterclaim for about $14,000, and the referee dismissed Lilienthal's claim, and found against him in favor of Wallach & Co.'s right to recover their counterclaim of $14,000. Immediately, Lilienthal moved for a new trial, and to set aside this report;

and in order to pursue this motion, which was the only way he could review, (as we do an appeal,) he was compelled to give security for the costs which had been taxed against him at $1,052.75, and thus the undertaking executed by the defendants, and sued upon in this action, was given; and it recited that the costs had been so taxed, and that Lilienthal intended to move for a new trial, etc., and undertook that Lilienthal would pay the costs, and provided that the same should become void if the new trial was granted or the report vacated. It must be remembered that, if Lilienthal should have succeeded in obtaining the new trial, he might eventually recover against Wallach & Co. a judgment for about $12,000. When the order was made directing the taxing of the costs, and giving security for same, Wallach & Co, were enjoined from entering judgment for six weeks, from August 3, 1888, and Lilienthal was given the same time within which to serve his bill of exceptions and to move for new trial.· Thereafter Lilienthal obtained another extension from the court to serve his bill of exceptions and to move for new trial, but his counsel, mistaken in his practice, neglected to secure from the court a continuance of the stay as against entry of judgment; and his adversary, ever alert, entered judgment against Lilienthal for $14,112.72, which, of ·course, included the bill of costs as taxed and secured as aforesaid. This judgment was entered September 21, 1888. It is sufficient to say that this judgment was never vacated, although Lilienthal secured numerous extensions to serve his bill of exceptions and to move for new trial; and it would seem that he never has absolutely lost his right to serve his bill of exceptions, and to move for a new trial; for it appears that Lilienthal moved for leave to serve his bill of exceptions *nunc pro tunc,* which motion often appeared on motion calendar, and was adjourned from time to time by the court, and, when last called on the calendar, counsel for Wallach & Co. moved to have same dismissed, which was denied, and the same was marked off, with right to have it restored and heard by the court. During all of this time Lilienthal had an order of court which extended his time to serve his bill of exceptions and to move for new trial "until after the entry and service of an order upon the determination of his said motion for leave to serve his bill of exceptions *nunc pro tunc*," which motion has never been heard or determined, but simply marked off calendar, as shown above. Now, if Lilienthal has never lost his right to review the findings of the referee,· why, of course, the defendants would not be liable upon the undertaking sued upon, and which was given to enable him to so review the judgment so obtained against him by Wallach & Co., and which, if finally reversed, would forever wipe out the bill of costs to secure which these defendants entered into the undertaking sued upon. The counsel for plaintiff here contends, however, that Lilienthal has forever lost that right to review the judgment into which is merged such bill of costs, by reason of certain technical rules of practice which prevail in the United States courts, and the decisions upon the same. But, be that as it may, it is certain that on January 29, 1890, it was in dispute and controversy between Wallach & Co. and Lilienthal whether or not Lilienthal had, by the mistaken practice of his former counsel, lost his right to review, his chance to reverse, and the legal possibility to recover, upon a new trial, a judgment against Wallach & Co. for his original claim of $12,000. This dispute and controversy as to his rights would alone be sufficient consideration .to support the agreement entered into between him and Wallach & Co. on that day, and which provided for an exchange of general releases between him and Wallach & Co.; and, if this agreement is supported by a valuable consideration, no one can doubt, after reading it, that these defendants, the sureties, were released thereby,—first because it deprived Wallach & Co., the principal creditors, forever from enforcing the judgment against Lilienthal,·· the principal debtor, and into which had been merged the costs to secure which these defendants, the sureties, had obligated themselves; and even if

Wallach & Co.'s right to enforce the judgment had not been absolutely lost forever by this agreement, still the fact that it suspended their right of such enforcement first to ·February 6, 1890, then to the 17th, and finally to March 13, 1890, would release these defendants, the sureties.    This agreement was as follows:

"It is agreed by and between Willy Wallach and Edgar S. Blackwell, composing the firm of Willy Wallach and Maurice Lilienthal, that all claims and demands now existing between them, including all sums now due upon the judgment recovered in the circuit court of the United States for the southern district of New York by said Willy Wallach and Edgar S. Blackwell against said Maurice Lilienthal, and entered in the clerk's office of said court the 21st day of September, 1888, for $14,112, be settled and adjusted as follows:    The said Maurice Lilienthal shall pay Frank E. Blackwell, as attorney for said Wallach and Blackwell, the sum of $5,000, of which $1,300 shall be paid on or before February 6, 1890, in cash; and a part or the whole of the balance may, at the election of said Lilienthal, be paid by allowing the taking of such proceedings in said action, or any actions relating thereto, or by the execution of such instruments as will be necessary to enable said Blackwell and ·Wallach to collect, as speedily as possible, all moneys due from Messrs. Sehall ·& Co., and the representatives of Messrs. George & Co., of New York, and Messrs. Hooper, Lewis & Co., of Boston, to said Lilienthal; and in case there is any balance of said $5,000 remaining due after such payment and collection, or ineffectual proceedings for that purpose, the same shall be paid to the said Frank E. Blackwell, as attorney, in cash forthwith; but should there ·be any sum in excess of said $5,000, the same shall be paid to said Lilienthal. ·The said Maurice Lilienthal shall forthwith execute and deliver a general release to said firm of Willy Wallach and to said Wallach and Blackwell, severally, which said releases shall be held by said firm in escrow only until this agreement be in all respects fulfilled; and the said Willy Wallach and ·Edgar S. Blackwell shall, upon receipt of said sum of $1,300 as aforesaid, and said general release or releases, execute and deliver to Messrs. Coudert Brothers, his attorneys, a general release to said Maurice Lilienthal, and a ·satisfaction of the judgment so recovered by them as aforesaid, to be held by said Coudert Brothers in escrow only until this agreement be in all respects fulfilled.    All the general releases herein provided for shall be for the consideration of one dollar.

"*Dated January 29th,* 1890.         WILLY WALLACH and
                                        "EDGAR S. BLACKWELL.
              "By FRANK E. BLACKWELL, Their Attorney.

"Maurice Lilienthal having this day paid to Frank E. Blackwell, attorney, the sum of $400, the time limited by the foregoing agreement for the payment of the balance of the sum of $1,300 therein mentioned, is hereby extended to and including the 17th day of February, 1890.

"*Dated February 6th,* 1890.         WILLY WALLACH and
                                        "EDGAR S. BLACKWELL.
              "By FRANK E. BLACKWELL, Their Attorney."

"The within agreement is hereby extended to and including March 13th, ·1890.

"*Dated March 12th,* 1890.         WILLY WALLACH and
                                      "EDGAR S. BLACKWELL.
              "By FRANK E. BLACKWELL, Their Attorney."

This agreement is amply supported by valuable considerations.    First, the dispute and controversy as to whether or not Lilienthal still had the right to review, the chance to reverse, and the legal possibility to recover, upon a new trial, judgment against Wallach & Co. for $12,000, his original claim; the agreement to exchange mutual releases by and between Lilienthal and Wallach & Co., and the individual members of that firm; the right to elect and

the election by Lilienthal (by actual transfer) to pay the balance of the $5,000 remaining after the payment of $1,300 in cash, "by the execution of such instruments as will be necessary to enable Wallach & Co. to collect all moneys due" Lilienthal from the three firms mentioned in the agreement, including two bills of exchange accepted by one of such firms, instead of "by allowing the taking of such proceedings in said action, (the one in which the judgment was recovered against Lilienthal,) or any action relating thereto, as will be necessary to enable Wallach & Co. to collect all moneys" due to Lilienthal from said three firms. This agreement having specified that proceedings in the judgment action could only be taken to enable Wallach & Co. to collect these moneys due from the three firms, therefore the action and judgment could not be kept alive or enforced for any other purpose. Now, as to the escrow of the releases, the meaning and intent of the agreement is that the releases to Wallach & Co. and the individual members of that firm were to be so held until they had accounted for the moneys collected from those three firms by them; and, as they have not collected as much as the balance of $3,700 which was to be paid out of these moneys, why they now hold them under absolute delivery, unless they are liable for some neglect in not collecting more than the $1,952.40, which they admit, and which leaves about $1,700 still due from Lilienthal to Wallach & Co. under the agreement, and upon the payment of which, with interest, Lilienthal would be entitled to hold absolutely the release to him which is now held by his counsel in escrow.

It only remains to briefly state the rules of law applicable to cases where the principal creditor, by satisfying or extending the time of payment of the debt of the principal debtor, thereby releases the surety from all liability therefor, in order to show that the judgment in the case at bar entered upon a verdict directed for the plaintiff must be reversed, and judgment given for defendants dismissing the complaint on the merits, with costs of action and of appeal. A creditor cannot bind himself by a simple agreement to accept a smaller sum in lieu of an ascertained debt of larger amount, such an agreement being *nudum pactum*. But, if there be any benefit, or even legal possibility of benefit, to the creditor thrown in, that additional weight will turn the scale, and render the consideration sufficient to support the agreement *Bull* v. *Bull*, 43 Conn. 455, cited with fullest approval in *Jaffray* v. *Davis*, 124 N. Y. 172, 26 N. E. Rep. 351. In this latter case the defendants gave their promissory notes upon time for one half of the debt they owed plaintiff, and also gave plaintiff a chattel mortgage on the stock, fixtures, and other personal property of the defendants under an agreement with plaintiff to accept the same in full satisfaction and discharge of said indebtedness; and it was held that plaintiff could recover no more than the one half so agreed to be paid. In the case at bar, in addition to the other considerations, Lilienthal gave Wallach his claims against three firms, and also two bills of exchange accepted by a stranger to the transaction. Of course, the satisfaction of a debt for which another is security releases the surety, and an agreement for an extension of such debt, made without the consent of the surety, upon a valid consideration, which precludes the creditor meanwhile from enforcing the debt against the principal, thereby changing the position of the surety, will release the surety. *Lowman* v. *Gates*, 37 N. Y. 604, and *Powers* v. *Silberstein*, 108 N. Y. 169, 15 N. E. Rep. 185. The surety, upon the payment, is subrogated to the rights of the creditor, but only to his rights; and if the creditor has bound himself by any transaction with the principal debtor, which prevents the surety, upon payment, from immediately prosecuting the principal debtor, the former is discharged. Any valid or binding agreement, whereby the surety may be deprived of or delayed in the assertion of his equitable claim to pay the debt, and to become subrogated to the rights and remedies of the creditor, if made without the assent of the surety, will discharge him. *Bangs* v. *Strong*, 10 Paige, 11. When time is given to the principal debtor,

though but for a single day, the surety is discharged. The surety, when he pays the debt, must have an immediate right of action against the principal; and that right cannot be postponed for any period, however short, by the creditor without discharging the surety. *Bangs* v. *Strong*, 7 Hill, 250, and *Ducker* v. *Rapp*, 67 N. Y. 464. By applying these principles to the transaction between Lilienthal and Wallach & Co., the conclusion is reached that these defendants, the sureties, were discharged, and should have had judgment below. The original judgment against Lilienthal, and in favor of Wallach & Co., was for $14,112.72, and Wallach & Co. having already been paid altogether upon the same $8,558, and had we not concluded to give judgment absolute for defendants, we should have ordered the judgment reduced by applying this payment *pro rata* on account of payment of the costs, as well as on account of the principal sum, both of which are thrown together in making up the whole judgment, as it was upon account of the whole that the payment of $8,588 was made. And such order could have been made under the familiar rule that, when two debts have been blended and thrown together, and a surety is liable for one of them and not the other, and a payment is made on account of the whole debt as so blended, then that such payment must be applied *pro rata* on account of both the secured and the unsecured parts of the whole debt. The judgment appealed from is reversed, and judgment is directed for defendants, dismissing the plaintiff's complaint upon the merits, with costs of action and costs of appeal, and they are awarded an extra allowance of 5 per cent. upon the amount claimed by plaintiff. All concur.