THE FEDERAL LAND BANK OF SPRINGFIELD, MASSACHUSETTS, Plaintiff, *v.* ALICE G. SHOEMAKER and Others, Defendants.

County Court, Madison County, April 25, 1933.

W. E. *Lounsbury*, for the plaintiff.

*Harlow B. Ansell*, for the defendant Alice G. Shoemaker.

CAMPBELL, J. This is an action to foreclose a mortgage on a farm of about 300 acres in the town of Cazenovia, Madison county. The mortgage was executed on January 30, 1922, by defendant Alice G. Shoemaker, who then owned the mortgaged premises. It provided for payments in semi-annual installments.

Subsequently and on July 20, 1928, defendant conveyed the mortgaged premises to one Mary J. Reed, who assumed and agreed to pay the mortgage. This mortgage contained the usual provision that in case of default in payment of installments, taxes or insurance, plaintiff might elect that the whole amount become due, and has brought this action to foreclose, asking for a deficiency judgment against the defendant A ice G. Shoemaker.

It is the claim of the defendant Alice G. Shoemaker that she has been released as a surety on the mortgage by the acts of plaintiff.

Previous to this action and during the year 1930 plaintiff commenced an action to foreclose the mortgage on account of default in payment of the principal and interest accruing January 1, 1930. That action did not go to judgment but was discontinued upon the payment of a specific sum and the giving of a promissory note for $250 indorsed by Dr. Shoemaker, defendant's husband, which was to guarantee certain repairs to the buildings on the premises.

The complaint declared the entire principal to be due and payable but there is no evidence before the court of any previous notice electing that the entire amount become due. It is very doubtful if the plaintiff was entitled to foreclose until he had given a written notice of election before starting the first foreclosure action. (Real Prop. Law, § 254, subd. 8; *Rodler* v. *Pacht*, 204 App. Div. 890.)

In answer to the defendant's cla m that she has been discharged, the plaintiff contends that this first foreclosure action was discontinued and the mortgage reinstated with the knowledge, approval and consent of defendant Alice G. Shoemaker. The law on this point is so well established that the citation of authorities is hardly necessary. That if the reinstatement and discontinuance was without the consent of defendant or the time for payment was extended for a valuable consideration the defendant is released. (*Antisdel* v. *Williamson*, 165 N. Y. 372; *Syracuse Trust Co.* v. *First T. & D. Co.*, 141 Misc. 603; *Ducker* v. *Rapp*, 67 N. Y. 464.)

The election by the plaintiff that the whole amount be due inures to the benefit of the surety, discharges him and cannot be

waived without his consent. (*Welsh* v. *Henel*, 226 App. Div. 198; *Ost* v. *Mindlin*, 170 id. 558; affd., 224 N. Y. 668.)

Consequently, the question here to be determined is: Did the defendant consent to and approve the discontinuance of the first foreclosure action and a reinstatement of the mortgage?

Before the first action was discontinued and the mortgage reinstated a conference was held in Syracuse, N. Y., which was attended by Dr. Shoemaker, the husband of defendant, Mr. Lounsbury, attorney for plaintiff, and other representatives of the plaintiff. At this conference it was agreed that a certain sum should be paid to satisfy the past due installments, in addition to the costs, and a note given for $250 to be used for the repair of the buildings and which note was indorsed by Dr. Shoemaker. The terms of this agreement were afterwards complied with and defendant drew and signed her check for $479.56 which was forwarded to the land bank by Dr. Shoemaker for the purpose of paying the past due principal and interest. Defendant Alice G. Shoemaker also paid additional sums for costs, insurance and interest.

On March 28, 1930, the plaintiff's executive committee by resolution took the following action: " Mary J. Reed, under foreclosure. Voted that the Reed mortgage be reinstated providing all delinquencies and foreclosure costs are paid and providing note for $250, endorsed by Dr. Shoemaker, the original borrower, is given the Association to guarantee certain building repairs." It is not shown that the resolution was ever brought to the attention of defendant.

The foreclosure action was discontinued April 14, 1930, by the entering of an order to that effect in the Madison county clerk's office. The fact that the check of Mrs. Shoemaker was the means whereby the terms of said agreement were fulfilled and the action discontinued and the mortgage reinstated is a very pertinent fact.

On April 5, 1930, the following letter was written by Dr. Shoemaker to the plaintiff and duly received by it: " Federal Land Bank, Springfield, Mass. April 5, 1930. Enclosed please find check of Alice G. Shoemaker for $497.66 to cover principal and interest payment of $350; penalty interest $5.47; insurance premiums $142.19 on Shoemaker-Reed farm at New Woodstock, N. Y. Believe that the above is as agreed at conference held here at Syracuse."

Thereafter and on April 11, 1930, Dr. Shoemaker wrote a letter which was received by plaintiff on April 12, 1930, and the letter stated: " Yours 9th at hand. Check has gone forward to W. E. Lounsbury for $200.53; also tax receipts for $60.60 and $284.68; also note duly signed and endorsed, to E. T. Lewis, Secy for $250,

with the understanding we will duly receive notice of discontinuance and evidence of complete satisfaction in the Reed-Paddock-Shoemaker matter," signed by Dr. Shoemaker.

It is argued by the defendant that the words " with the understanding we will duly receive notice of discontinuance and evidence of complete satisfaction," signify that the checks were given by Mrs. Shoemaker with the idea and purpose that she should be released from all further liability as a surety, but subsequently and on June 30, 1931, Dr. Shoemaker wrote a letter to the plaintiff containing the following: " I believe I have written you before that Mrs. Shoemaker and I have lost cash payments and equity in properties to more than $25,000 which of course has made the recipients acquire by force these thousands for their personal yet unearned benefit. We have none left whatsoever to give to the Federal Land Bank or others, no matter how much sought for.

Again on February 23, 1932, Dr. Shoemaker wrote another letter to the plaintiff which stated as follows: " My dear Sir: Re Federal-Mary Reed. Yours received yesterday. I note that you state that there is an indebtedness of $722.84. I recall that there was an indebtedness of $1058.50 a year ago last Fall which we paid. The Bank has received hundreds and thousands in the past on the original amount loaned, and certainly there have been many improvements made. Maybe the Bank now feels that it is time to try to obtain a new buyer after it shall have foreclosed or try to obtain a deed to that property which cost Mrs. Shoemaker and me over $25,000 originally and we purchased it from a man who paid $50,000 for it. Am wondering whether or not the officers at Springfield are not going to be able to endeavor to fulfill any expectancy of the owners of mortgaged farms as to granting extensions according to some definite program, because of the extended funds voted for farm relief? Or is it just idle talk for some unknown reason? Do you think the burdened farmer is really going to be granted any further credit or favor out of all that has been appropriated? If the Bank is bound to have that Reed farm think the cheapest way would be to get Mrs. Reed to pass the deed. Foreclosures cost cash. May I ask if you cannot make us an offer if Mrs. Reed can be induced to pass the deed? Will talk this matter over with Mrs Shoemaker and our attorney upon receipt of your letter, giving the same prompt attention."

It is clearly evident after reading these several communications by Dr. Shoemaker that it was not intended that a satisfaction and release of defendant Alice G. Shoemaker should be given by the plaintiff.

It is very clear that it was the intention of Dr. Shoemaker that her interest and any equity in the premises should be saved.

When the mortgage was originally executed by the defendant to the plaintiff, Dr. Shoemaker, her husband, made all the negotiations, attended to all the business and at no time was Mrs. Shoemaker present. Although the defendant testified that she did not consent to an extension or reinstatement yet she testified that her husband, Dr. Shoemaker, acted for her in this entire matter and the evidence is so clear that he was intrusted by her with the details of this transaction in its entirety and that Mrs. Shoemaker's check was made and signed by her for the purpose of saving her interest in the property, that there can be no question in the mind of the court that defendant consented to and approved the discontinuance and reinstatement.

It is also contended by the defendant that since plaintiff extended the time of payment of certain installments past due at the request and promise to pay of one Lelia E. Paddock, a tenant on the farm, she, the defendant, is released from her obligation as a surety.

It clearly appears that the plaintiff did extend the time for payment of certain past due installments. The said Lelia E. Paddock promised plaintiff that she would pay these installments by sending in twenty-five dollars per week, which was done, but there was no duty resting upon the said Lelia E. Paddock to pay the same. Her promise of payment constituted a valid consideration for the extension. (*Krebs* v. *Carpenter*, 124 App. Div. 755; *Jester* v. *Sterling*, 25 Hun, 344.)

But a mere extension of time in payment of installments due or past due does not discharge the surety except as to the amount of said installments. (*Cohn* v. *Spitzler*, etc., 145 App. Div. 104; affd., 207 N. Y. 738; *Coe* v. *Cassidy*, 72 id. 133; *Ducker* v. *Rapp*, 67 id. 464; *Lowman* v. *Yates*, 37 id. 601, 604.)

The recent case of *East Side Savings Bank of Rochester* v. *Scanlon* 146 Misc. 695) does not apply since there was no prepayment of interest in this case and the court finds that any reinstatement was with the approval and consent of the defendant as above indicated.

The plaintiff is entitled to a deficiency judgment against the defendant except as to the amount of the installments of principal and interest which were extended as to the time of payment according to the agreement made by Lelia E. Paddock.

Judgment may be entered accordingly.